Joann HUTTO, Appellant,

v.

Carl S. HUTTO, Appellee.

No. 51620.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 9, 1979.

J. Clark Russell, Russell, Payne & Farber, Oklahoma City, for appellant.

Joe B. McMillin, Jr., Donley, McMillin & Winchester, Weatherford, for appellee.

BRIGHTMIRE, Judge.

The principal complaint of the woman in this divorce action is that the court did not order the man to pay her lawyer a large enough attorney's fee. Secondarily, she contends her award of the jointly acquired property—essentially all of it—was not enough and also that support for a foster child should have been allowed. We find no reversible error in the record and affirm.

The parties, Joann and Carl Hutto, were married in 1971. She bore him no children but he did adopt a child born to her during an earlier marriage. The couple was given legal guardianship of another child—a fifth grade student whose parents had abandoned her.

When she met Carl Hutto, Joann was 22 years old, had a son about three years old, a 1966 Pontiac and some used furniture, held Bachelor's and Master's degrees in the field of education, and taught school at Moore, Oklahoma. Hutto owned an interest in his parents' clothing store in Weatherford, Oklahoma, some stock, a sterling silver bar and a 1969 Thunderbird automobile.

Following the marriage Joann taught remedial reading for the Washita County and Elementary School system and began work toward a Ph.D at Oklahoma University. She continued on as a public school teacher during the marriage and later supplemented her income with two part-time teaching assignments at Southwestern University in Weatherford. At the time of trial she was working as an elementary school counsellor for the Weatherford public school system at an annual salary of $11,040. Her total income was around $13,440 a year.

During the marriage Hutto helped his parents carry on a clothing store business and at time of trial was earning in the neighborhood of $12,000 to $15,000 annually.

When this action was filed, the jointly acquired estate consisted of a home worth about $90,000, furnishings and equipment having a market value of $3,750, and $4,500 worth of jewelry and silver—a total asset value of some $98,250. There existed a mortgage indebtedness against the realty of $51,000 which when coupled with other liabilities of about $4,000, resulted in a jointly acquired net worth of $43,250.

To the woman the trial court gave all the jointly acquired assets subject to the $55,000 indebtedness which he ordered her to pay. All the man received was judicial recognition of his separate property and the freeing of it from any claim of the woman.[1] The court gave Joann custody of her child, ordered the man to pay $200 a month for his support, declined to order him to support the ward, and awarded Joann an attorney's fee of $750.

---

1. In the decree the trial court apparently considered the enhanced value of the man's interest in the business and in his stock as jointly acquired assets. As we later point out, however this was incorrect.

## II

■ The woman's first proposition is that allowing her only a $750 attorney's fee was an abuse of the court's discretion. The argument is that $750 is inadequate for the work done and the results accomplished by her lawyer—an argument based upon the assumption that in making the award the court purported to determine what fee the woman's attorney had earned.

The short answer to this is that the trial judge did not make such a determination. He simply decided that $750 is all the man should have to pay on the fee and that whatever else was due would have to be paid by the client. "I realize," said the court, "that Mr. Payne has done an enormous amount of work. He entered into a contract with plaintiff and he was employed. I am going to set his attorney fees *to be paid by this defendant* in the sum of $750, and *he has his contract with this plaintiff to take care of the rest of his fee.*" (emphasis added)

We hold the trial judge did not abuse his discretion.

## III

The woman's next complaint is that the trial court "erred in determining the amount of jointly acquired property and in refusing to award [her] a continuing property settlement out of the future income of the department store business."

Her argument centers around the fact that during the marriage she worked in the store occasionally, went to the clothing market with her husband at various times and gave him the benefit of her opinion on what merchandise to buy; did some actual buying of lingerie from one traveling salesman and clothes from another; helped to remodel the store; and carried out a supporting role at home. All of this, she maintains, increased (1) the "earning capacity" of her husband and (2) the market value of the business.

Taking the contribution she says she made to the clothing store business at face value we are, first of all, hard put to see where it increased her husband's earning capacity. Moreover, even assuming it did, perhaps it would have to be said that it was offset by his contribution to an increase in her earning capacity.

■ And so far as her enhancement of the business' net worth is concerned her argument fails for at least two reasons. First, for the increased value of the business to be properly considered as part of the joint marital estate she was obliged to prove (1) that the net worth of the business increased during the marriage, and (2) such increase resulted in substantial part from her efforts. *Wright v. Wright*, Okl.App., 577 P.2d 922 (1978). Neither fact was shown. Second, even had she proved the two elements, she would still have been faced with the problem of trying to justify the equity of giving her all or substantially all of the marital estate—a somewhat formidable task it seems to us.

We hold the division of property made in this case is not unfair to Joann Hutto.

## IV

■ The woman's final contention is that the trial court should have required the man to pay child support for the young girl of whom the parties were guardians. The conclusion is founded on the assertion in her brief that a district court in another county ordered Hutto to support the child when he was appointed her guardian and that the court in this case was obliged "to uphold" that order.

We disagree. The authority of the court in this lawsuit with regard to ordering the payment of support money is of statutory creation and extends only to "children of the marriage." 12 O.S.1978 Supp. § 1277. Foster children do not fall within this classification and therefore the trial court cor-

rectly concluded he was without power to compel the man to support the foster child.[2]

Affirmed.

BACON, P. J., and NEPTUNE, J., concur.

**2.** Moreover, the matter apparently became academic even before the decree was signed because according to the man's brief "the child was placed in another foster home and has not lived with [Joann] since approximately two weeks after the divorce . . . .''